810 A.2d 688 (2002)
In re J.D.W.M., A/K/A J.D.W.-M. Appellee.
Appeal of R.D.M.
In re K.W.M., A/K/A K.M. Appellee.
Superior Court of Pennsylvania.
Submitted September 3, 2002.
Filed October 31, 2002.
*689 Emma L. Oh, Philadelphia, for appellant.
Lisa M. Visco, Fort Washington, for appellee.
Jonathan J. Houlon, Philadelphia, for Department of Human Services, participating party.
Before: HUDOCK, JOYCE and TAMILIA, JJ.
TAMILIA, J.
¶ 1 R.D.M., mother, appeals the November 15, 2001 Decrees terminating her parental rights as to the minor children, J.D.W.M., born July 27, 1996, and K.W.M., born June 10, 1993.[1]
¶ 2 On August 28, 1995, the Philadelphia County Department of Human Services (DHS) received a report that then two-year-old K.W.M. had been discovered wandering alone at a North Philadelphia intersection. The report was substantiated and mother, then seventeen, was provided services and enrolled in a supervised independent living program. Mother's failure to comply with the conditions of her program eventually led to the removal of K.W.M. and another child, who is not a subject of this appeal. Following the birth of J.D.W.M., mother signed a voluntary placement agreement.
¶ 3 On June 28, 1997 and October 22, 1997, J.D.W.M. and K.W.M., respectively, were adjudicated dependent.[2] Since June 24, 1998, both children have been in the custody of DHS.[3] Although the initial family service plan (FSP) called for reunification of the children with mother, mother failed to maintain visitation with the children and otherwise failed to comply with the objectives set forth in the FSP. In May 1999, DHS filed petitions for change of goal from reunification to termination of parental rights and adoption and for termination of mother's parental rights. Following an evidentiary hearing, the family court division[4] entered the Decrees now on appeal.
¶ 4 Mother raises the following questions for our review.
A. Can the trial court terminate mother's parental rights based on a goal change termination petition which had already been previously denied?
B. Did the trial court fail to properly take into consideration the totality of appellant mother's circumstances which affected her ability to fulfill her goals under the family service plan during the relevant time frame, which circumstances included burdensome health and emotional circumstances of mother related to a difficult pregnancy, hospitalization of mother, premature birth and the *690 subsequent death of mother's infant daughter while in DHS custody, hospitalization of mother, and subsequent miscarriage; that mother's health had recovered as of the date of the hearing; that DHS failed to provide mother with any emotional support services and refused to write a letter which would have enabled mother to obtain appropriate housing for herself and her children?
(Appellant's brief at 16.)
¶ 5 " `The standard of review in cases involving the termination of parental rights is limited to the determination of whether the orphans' court's [here family court division] decree is supported by competent evidence." `In re Adoption of J.D.S., 763 A.2d 867, 870 (Pa.Super.2000), quoting In re Julissa O., 746 A.2d 1137, 1139 (Pa.Super.2000).
¶ 6 As the party seeking termination, DHS bore the burden of establishing, by clear and convincing evidence, that grounds existed for terminating mother's parental rights." `The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue.'" In re Adoption of C.A.W., 453 Pa.Super. 277, 683 A.2d 911, 914 (1996), appeal denied, 548 Pa. 631, 694 A.2d 619 (1997), quoting Matter of Sylvester, 521 Pa. 300, 304, 555 A.2d 1202, 1203-1204 (1989).
¶ 7 In pertinent part, 23 Pa.C.S.A. § 2511, Grounds for involuntary termination, provides:
(a) General rule.The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
* * *
(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
* * *
(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
¶ 8 Above all else in determining whether parental rights should be terminated, adequate consideration must be given to the needs and welfare of the child. In re Child M., 452 Pa.Super. 230, 681 A.2d 793 (1996), appeal denied, 546 Pa. 674, 686 A.2d 1307 (1996).
¶ 9 We begin by addressing mother's first challenge that the family court division improperly terminated her parental *691 rights in that the court allegedly denied a petition for change of goal termination on September 23, 1999. The record reveals that a hearing was held on that date with respect to the parental rights of J.W., R.S. and mother;[5] however, the record indicates Orders of disposition were entered with respect to only J.W. and R.S. at that time. See September 23, 1999 Orders, see also N.T. 11/14/01, at 72. DHS contends in its brief, and we find no evidence of record to the contrary, that the family court division directed matters regarding mother to proceed to the next court date. Moreover, mother failed to include this challenge in her statement of matters complained of on appeal, thus precluding review of the issue. See Commonwealth v. Lord, 553 Pa. 415, 719 A.2d 306 (1998).
¶ 10 DHS set forth several criteria for mother in order to facilitate the reunification process. They included the following:
 completion of her education;
 obtaining and maintaining employment;
 securing appropriate housing;
 attendance at and completion of parenting classes; and
 regular visitation with the children.
¶ 11 The record reveals mother consistently refused to comply with the FSP objectives. She failed to obtain housing, take steps to acquire an education and job training or to complete parenting classes. Further, mother's actions evidenced a lack of commitment to repairing her relationship with the children. After repeated, unsuccessful attempts at aiding mother, DHS recommended an intensive twelve-week reunification program. Mother agreed to enroll in the program and then twice reneged on her commitment to participate. In addition, in 1999, mother was convicted of possession of a controlled substance. Mother also has admitted that she likes to "run the streets." N.T., 11/14/01, at 11.
¶ 12 Upon independent review of the record, we find mother's actions and attitude fully demonstrate her unwillingness and/or inability to care for the children. The record is devoid of any evidence that even suggests mother is capable of providing the children with a safe and healthy environment in which to live. To the contrary, it is clear mother has failed entirely to perform parental duties and there is no evidence appellant will ever change in this respect.
¶ 13 The record reveals that despite the fact that mother has been given ample opportunity and has been provided with many services to assist her in creating a life in which she might raise the children, mother refuses to take steps to create such a life. She has failed to re-establish a relationship with K.W.M., and has never had a relationship with J.D.W.M. We find mother's excuses for failing to provide proper parental care to the children to be indicative of her inability to take responsibility for herself.
¶ 14 Further, the record is replete with support for our conclusion the family court division weighed heavily the needs and welfare of the children in determining termination of mother's parental rights was appropriate. The record indicates the two children, who have spent most of their young lives in placement, are doing well in the care of a loving and attentive foster parent and that termination of mother's parental rights provides the children with the best chance for healthy and happy lives. A child's life, happiness and vitality simply cannot be put on hold until the parent finds it convenient to perform parental *692 duties. See Adoption of McCray, 460 Pa. 210, 331 A.2d 652 (1975), In re D.J.S., 737 A.2d 283 (Pa.Super.1999).
¶ 15 Finding the family court division's determination is supported by competent evidence, we affirm the Decrees.
¶ 16 Decrees affirmed.
NOTES
[1] This Court consolidated these cases on June 10, 2002.
[2] Upon review of the record, we find some discrepancy with respect to which child was adjudicated dependent on which date and, therefore, rely on the findings of the trial court with respect to the correct dates.
[3] The children were placed initially with their maternal grandmother; the record, however, reveals dirty and otherwise inappropriate conditions at the grandmother's house led to the children's placement in foster care.
[4] Pa. Const., Sched. to Art. 5, The City of Philadelphia, § 16,Courts and judges, "(q) The [Philadelphia] court of common pleas through the family court division of the court of common please shall exercise jurisdiction in the following matters: ... Adoption and Delayed Birth Certificates."
[5] J.W. and R.S. are the presumptive fathers of the children.