J-S13016-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.F., MOTHER | : | No. 2300 EDA 2020 |

Appeal from the Order Entered November 12, 2020
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-000020-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.F., MOTHER | : | No. 2302 EDA 2020 |

Appeal from the Order Entered November 12, 2020
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-000021-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: M.D.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.F., MOTHER | : | No. 2303 EDA 2020 |

Appeal from the Order Entered November 12, 2020
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000022-2020

| IN THE INTEREST OF: M.S., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: R.F., MOTHER | : | No. 2304 EDA 2020 |

Appeal from the Order Entered November 12, 2020
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0003349-2017

| IN THE INTEREST OF: A.S., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| APPEAL OF: R.F., MOTHER | : | No. 2323 EDA 2020 |

Appeal from the Order Entered November 12, 2020
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-DP-0003350-2017

BEFORE: OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    **FILED JULY 20, 2021**

Appellant, R.F. ("Mother"), appeals from the orders entered in the Philadelphia County Court of Common Pleas, which granted the petitions of the Philadelphia Department of Human Services ("DHS") for involuntary termination of Mother's parental rights to her minor children, A.D.F., A.M.S.

_____

[*] Retired Senior Judge assigned to the Superior Court.

and M.D.S. ("Children"),[1] and changed Children's permanency goals to adoption.[2]  We affirm and grant counsel's petition to withdraw.

The trial court set forth the relevant facts and procedural history of this case as follows:

> On December 18, 2017, [DHS] received a General Protective Services ("GPS") report which alleged Mother left her Children [A.D.F.] (9 months old); [A.M.S.] (2 years old) and [M.D.S.] (3 years old) in the family home without adult supervision.  Mother had a history of mental health issues and demonstrated a history of unstable housing.  On December 20, 2017, as a result of the GPS report, DHS obtained an Order of Protective Custody ("OPC") for Children.  On March 14, 2018, …Children were adjudicated dependent and Mother was referred to the Family Court of Philadelphia Clinical Evaluation Unit ("CEU") for a forthwith drug screen.  On April 17, 2018, Mother failed to report to the CEU to submit to a random drug screen.  On June 6, 2018, CEU reported that Mother tested positive for cannabis following a random drug screen.  On December 17, 2019, the Community Umbrella Agency ("CUA") held a revised Single Case Plan ("SCP") meeting.  …  The objectives identified for Mother were (1) to attend a drug and alcohol assessment and comply with any recommendations of the

---

[1] A.M.S. and A.S. refer to the same child.  M.D.S. and M.S. refer to the same child.

[2] Mother filed notices of appeal from each of the orders involuntarily terminating her parental rights to each child.  Mother, however, only filed notices of appeal from the orders changing A.M.S.'s and M.D.S.'s permanency goals to adoption.  Mother did not file an appeal from the order changing A.D.F's permanency goal to adoption.  Thus, Mother has waived any claims concerning A.D.F's goal change.  **See In re Adoption of A.H.**, 247 A.3d 439 (Pa.Super. 2021) (waiving mother's issue concerning change of child's permanency goal to adoption where mother filed single notice of appeal from termination decree and failed to file notice of appeal from separate goal change order).  Nevertheless, we will continue to refer to A.M.S., M.D.S., and A.D.F. collectively as "Children" when discussing the termination and goal change issues.

assessment; (2) to complete three random drug screens; (3) to attend CEU for dual diagnosis recommendations; (4) to attend supervised visitation with …Children; (5) to attend and complete parenting classes; (6) to obtain appropriate housing; (7) to provide proof of employment and participate in employment services and (8) comply with CUA services and sign the required releases for herself and …Children.

On January 9, 2020, DHS filed separate Petitions to Terminate Mother's Parental Rights as to each child alleging that Mother failed to achieve certain [SCP] objectives including obtaining suitable housing and maintaining regular visitation with …[C]hildren.  These SCP objectives were made known to Mother on more than one occasion by DHS and the trial court.  At the conclusion of a hearing on November 12, 2020, the trial court found clear and convincing evidence to involuntarily terminate the parental rights of Mother and to change the goal of …Children to adoption pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and 23 Pa.C.S.A. § 2511(b).  The Notice[s] of Appeal [and Pa.R.A.P. 1925 concise statements of matters complained of on appeal were] filed by Mother on December 7, 2020.

(Trial Court Opinion, dated November 12, 2020, at 2-3) (internal citations omitted).  On February 10, 2021, this Court consolidated Mother's appeals *sua sponte*.[3]  Additionally, on March 11, 2021, Mother's counsel filed an **Anders**[4] brief and application to withdraw in this Court.

As a preliminary matter, counsel seeks to withdraw her representation pursuant to **Anders, supra** and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009).  **Anders** and **Santiago** require counsel to: (1) petition

[3] Children's fathers are not parties to this appeal.

[4] **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support the appeal; and (3) furnish a copy of the brief to the appellant and advise her of her right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007). After establishing that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous. **Commonwealth v. Palm**, 903 A.2d 1244, 1246 (Pa.Super. 2006). **See also Commonwealth v. Dempster**, 187 A.3d 266 (Pa.Super. 2018) (*en banc*).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor [**Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.
>
> \*　　\*　　\*
>
> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and

- 5 -

counsel's references to anything in the record that arguably supports the appeal.

***Santiago, supra*** at 176, 177, 978 A.2d at 359, 360.  Thus, the Court held:

> [I]n the ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Id.*** at 178-79, 978 A.2d at 361.  ***See also In re J.D.H.***, 171 A.3d 903, 905-06 (Pa.Super. 2017) and ***In re V.E.***, 611 A.2d 1267, 1275 (Pa.Super. 1992) (explaining that ***Anders*** procedure applies in appeals from termination of parental rights and goal change orders).

Instantly, Mother's counsel filed a petition to withdraw and an ***Anders*** brief.  Counsel claims to have conducted a conscientious review of the record and determined the appeal is wholly frivolous.  Counsel supplied Mother with a copy of the brief and a letter explaining Mother's rights to retain new counsel or to proceed *pro se*.  In the brief, counsel provides a summary of the facts and procedural history of the case.  Counsel's argument refers to relevant law that might arguably support Mother's issues.  Counsel further states the reasons for her conclusion that the appeal is wholly frivolous.  Thus, counsel has substantially complied with the requirements of ***Anders*** and ***Santiago***.  ***See Wrecks, supra***.

Counsel raises the following issues on Mother's behalf:[5]

> Whether the trial court committed reversible error, when it involuntarily terminated Mother's parental rights, under 23 Pa.C.S.A. sections 2511(a)(1), (2), (5) & (8) when Mother presented evidence that would have substantiated the denial of the petitions to involuntarily terminate her parental rights and change the goal to adoption.
>
> Whether the trial court committed reversible error, when it involuntarily terminated Mother's parental rights, and changed the child's goal to adoption pursuant to 23 Pa.C.S.A. Section 2511(b), when DHS failed to prove by clear and convincing evidence that involuntarily terminating her parental rights best served the needs and welfare of her children.

(**Anders** Brief at 6).

In Mother's issues combined, she challenges the trial court's decision to terminate her parental rights and change Children's permanency goals to adoption. Mother claims she complied with some of her SCP objectives while Children's permanency goal was reunification. Mother also insists she has a strong bond with Children and terminating her parental rights to them and changing their permanency goals to adoption is not in Children's best interest. Mother concludes that the trial court erred in terminating her parental rights and changing Children's goals to adoption where the court lacked clear and convincing evidence that the statutory grounds for termination were met under 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). We disagree.

---

[5] Mother has not responded to the **Anders** brief *pro se* or with newly-retained private counsel.

Appellate review in termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by [the] finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the

court's decision, even if the record could support an opposite result. **In re R.L.T.M.**, 860 A.2d 190, 191[-92] (Pa.Super. 2004).

**In re Z.P., supra** at 1115-16 (quoting **In re Adoption of K.J.**, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed petitions for the involuntary termination of Mother's parental rights to Children on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)  General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for [her] physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

*     *     *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a

reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P., supra* at 1117. When conducting a termination analysis:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of…[her] parental rights does the court engage in the second part of the analysis pursuant to Section

2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted).

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying

close attention to the effect on the child of permanently severing the bond."

*Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

Instantly, Children have been in placement since December 20, 2017, due to Mother's drug use and abandonment of Children at home without adult supervision. At the termination hearing on November 12, 2020, Carolyn Smith, a CUA representative, testified that Mother has not visited Children since February 2018, and has repeatedly failed to meet her SCP objectives. Specifically, Ms. Smith testified that Mother has failed to complete parenting classes or drug, alcohol, and mental health treatment, and has failed to provide proof of adequate housing.

Additionally, Ms. Smith testified that Children share a parent-child bond with their respective foster parents. Ms. Smith agreed that Children's foster parents give Children love, safety, stability, and support, and provide for Children's medical, emotional, and developmental needs. Ms. Smith concluded there would be no irreparable harm to Children if separated from Mother, and adoption was in Children's best interest.

Similarly, Roya Paller, an independent social worker, testified that Children appeared to have bonded with their respective foster parents and that each foster home was adequate. Ms. Paller testified that the two older children, A.M.S. and M.D.S., indicated that they were amenable to adoption. Ms. Paller explained that the youngest child, A.D.F, was preverbal at the time of her interview. Nevertheless, Ms. Paller testified that she observed nonverbal signs of attachment and bonding between A.D.F and his foster parent.

Finally, Mother testified at the November 12th hearing, as well. Mother admitted that she failed to complete the majority of her SCP objectives, and only completed the housing and financial management programs. Mother also explained that she stopped visiting Children because "[she] just really had a lot going on." (N.T. Hearing, 11/12/20, at 58). Mother testified that she was living with her mother at the time.

On this record, Mother has demonstrated a refusal or failure to perform parental duties warranting termination of her parental rights under Section 2511(a)(1). *See* 23 Pa.C.S.A. § 2511(a)(1); *Z.S.W., supra*. Thus, we need not address the remaining Section 2511(a) subsections. *See In re Z.P., supra* at 1117. Further, the record makes clear termination will best serve the needs and welfare of Children, per Section 2511(b). *See* 23 Pa.C.S.A. § 2511(b); *Z.P., supra*. By virtue of our decision to affirm the court's termination orders, Mother's goal change complaints are moot. *See A.H.,*

*supra* at 445 (explaining that effect of our decision to affirm termination decree necessarily renders moot dependency court's decision to change Child's goal to adoption); ***Interest of D.R.W.***, 227 A.3d 905, 917 (Pa.Super. 2020) (stating: "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force of effect").

Following our independent review of the record, we agree with counsel that the appeal is frivolous. **See Dempster, supra**. Accordingly, we affirm and grant counsel's petition to withdraw.

Orders affirmed; counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2021